IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROLAND BRUCE CURRY, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS | § | Civil Action No. _____ |
| | § | |
| BANK OF AMERICA HOME LOAN | § | With Jury Demand Endorsed |
| SERVICING, LP, A SUBSIDIARY OF | § | |
| BANK OF AMERICA, N.A., | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Roland Bruce Curry, Jr. ("Plaintiff"), by counsel, and for his Complaint against the defendant, Bank of America Home Loan Servicing, LP, a Subsidiary of Bank of America, N.A. ("Defendant" or "Bank of America"), and states as follows:

### I. INTRODUCTION

1.  Plaintiff asserts claims against Defendant for the willful, knowing, and/or negligent violations of: 1) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, (known as the Fair Credit Reporting Act, hereinafter referred to as the "FCRA"); 2) invasion of privacy; and 3) the chapter 7 discharge injunction of the subject United States Bankruptcy Court, and seeks to recover actual, statutory, and punitive damages, legal fees and expenses against Defendant.

1

## II. PARTIES

2. Plaintiff is a natural person residing in Katy, Texas.

3. Defendant is a U.S. national bank that may be served by delivering citation to its registered agent, CT Corporation Systems at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

4. Defendant is a "person" and a "user" of consumer credit and other financial information, as said terms are defined and contemplated respectively, under the FCRA.

5. Defendant is a furnisher of consumer credit information to the national consumer reporting agencies Experian Information Solutions, LLC ("Experian"), Equifax, Inc. ("Equifax") and TransUnion, LLC ("TransUnion").

## III. JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1337(a) and 15 U.S.C. § 1681p and 28 U.S.C. §§2201-2202.

7. Venue in this district is proper because Defendant transacts business in this district, Plaintiff lives in this district and much of the conduct complained of occurred in this district.

## IV. FACTUAL ALLEGATIONS

8. On February 23, 2009, Plaintiff filed bankruptcy in case number 09-01052-BGC7 ("Chapter 7 Bankruptcy Case") in the Northern District of Alabama Bankruptcy Court, Southern Division ("Bankruptcy Court").

9. Prior to Plaintiff filing his Bankruptcy Case, Countrywide Home Lending ("Countrywide"), which was purchased by Defendant on or about July 1, 2008, asserted a pre-petition claim against Plaintiff in an attempt to collect a consumer debt he allegedly

owed. The subject debt required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes. The subject claim was listed on Schedule "D" of the Schedules Plaintiff filed in his Bankruptcy Case as a secured claim being secured by real property located at 1029 Longleaf Lake Drive, Bessemer, Alabama (the "Property") and identified as Account Nos. XXXXX0646 ("First Lien Account") and XXXXX0522 ("Second Lien Account") (collectively the "Accounts").

10. In Plaintiff's Statement of Intentions filed in his Chapter 7 Bankruptcy Case, Plaintiff listed the Property as "retained" and that he intended to "reaffirm the debt;" however, Plaintiff never did reaffirm the subject debt on the Accounts.

11. On February 25, 2009, the Clerk of the Bankruptcy Court sent a copy of the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" to Defendant by electronic transmission and on February 26, 2009 to Countrywide by first class mail. This mailing constituted formal notice to Defendant about Plaintiff's Chapter 7 Bankruptcy Case and the Notice warned all creditors in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362.

12. On May 27, 2009, the Bankruptcy Court issued an order granting Plaintiff' a discharge in his Chapter 7 Bankruptcy Case ("Discharge Order"). The Discharge Order enjoined all creditors from taking any action to collect discharged, pre-petition debt against Plaintiff. A true and correct copy of the Discharge Order is attached hereto as Exhibit "A."

13. The Bankruptcy Court sent a copy of the Discharge Order to all creditors and other parties listed on the mailing matrix previously filed in the Chapter 7 Bankruptcy Case. On May 29, 2009, the Bankruptcy Court sent a copy of the Discharge Order to

Countrywide by U.S. first class mail, and on May 28, 2009, to Defendant by electronic transmission. These mailings constituted formal notice about Plaintiff's discharge and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a). The Discharge Order and its notice warned all creditors, including Defendant, in conspicuous language that collection of discharged debts was prohibited. A copy of the Discharge Order is attached herein as "Exhibit A" and is incorporated herein by reference.

14. At no time during the pendency of the Chapter 7 Bankruptcy Case did Defendant, Countrywide or any other person or entity object to or dispute the details of the claim at issue.

15. At no time during the pendency of the Bankruptcy Case did Plaintiff reaffirm the debt on the First Lien Account or Second Lien Account.

16. At no time during the pendency of the Chapter 7 Bankruptcy Case was the subject pre-petition claim on the First Lien Account or Second Lien Account declared to be non-dischargeable.

17. On October 26, 2009, Plaintiff filed a chapter 13 bankruptcy petition in the Bankruptcy Court, case number 09-06264-TOM13 ("Chapter 13 Bankruptcy Case"), wherein he listed the Accounts in Schedule "D" as secured claims and listed the debt on the Accounts to be paid directly to Countrywide.

18. On October 29, 2009, the Clerk of the Bankruptcy Court mailed out the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines" ("341 Notice") to Countrywide by first class mail. This mailing constituted formal notice to Countrywide and Defendant about the Chapter 13 Bankruptcy Case. The 341 Notice warned all

4

creditors in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362.

19. On or about February 11, 2010, the Bankruptcy Court granted the Confirmation Order in the Chapter 13 Bankruptcy Case, confirming Plaintiff's Chapter 13 Plan, wherein the Accounts were listed as direct pays.

20. After the Chapter 13 Plan was granted, Plaintiff continued to make monthly payments to Countrywide (n/k/a Defendant) on the Accounts until February 2011, when he permanently vacated the Property.

21. On or about March 4, 2013, the owner of the First Lien Account, Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificate Holders CWALT, Inc., Alternative Loan Trust 2006-14CB Mortgage Pass-Through Certificates, Series 2006-14CB ("Bank of New York"), filed a Motion for Relief from Automatic Stay (Real Property) or in the Alternative Adequate Protection ("Motion to Lift Stay") in order to lift the stay on the Property in the Chapter 13 Bankruptcy Case with regard to the First Lien Account. In support of the Motion to Lift Stay, was the Declaration from Defendant's Assistant Vice President, Crisly Barcega, signed on behalf of Defendant as the servicing agent for the First Lien Account. A copy of the Motion to Lift Stay (without its attached Exhibits) and a true and correct copy of the Declaration in support thereof is attached hereto as Exhibit "B."

22. On March 18, 2013, an Agreed Order granting the Motion to Lift Stay was signed and entered by the Court, lifting the automatic stay as to the Property to allow for foreclosure of the Property by Bank of New York. A true and correct copy of the Agreed Order granting the Motion to Lift Stay is attached hereto as Exhibit "C."

23. Following the discharge of the debt on the Accounts in the Chapter 7 Bankruptcy Case; Plaintiff surrendering and vacating the Property; and the stay being lifted on the Property, Defendant engaged in debt collection activity against Plaintiff on the First Lien Account and/or Second Lien Account by: (1) repeatedly accessing and reviewing Plaintiff's consumer credit report with TransUnion without a legally permissible purpose; and (2) misrepresenting to TransUnion that it was accessing Plaintiff's consumer report to monitor or insure its account(s) when the subject debt had been discharged and the Property surrendered and vacated.

### Defendant's Illegal Pulls of Plaintiff's TransUnion Consumer Credit Report

24. On or about September 11, 2013, Defendant accessed Plaintiff's consumer report with TransUnion twice without a permissible purpose.

25. On or about October 8, 2013, Defendant accessed Plaintiff's consumer report with TransUnion without a permissible purpose.

26. On or about October 10, 2013, Defendant accessed Plaintiff's consumer report with TransUnion twice without a permissible purpose.

27. On or about November 9, 2013, Defendant accessed Plaintiff's consumer report with TransUnion without a permissible purpose.

28. On or about November 10, 2013, Defendant accessed Plaintiff's consumer report with TransUnion twice without a permissible purpose.

29. On or about December 7, 2013, Defendant accessed Plaintiff's consumer report with TransUnion without a permissible purpose.

30. On or about December 11, 2013, Defendant accessed Plaintiff's consumer report with TransUnion twice without a permissible purpose.

31. On or about January 9, 2014, Defendant accessed Plaintiff's consumer report with TransUnion without a permissible purpose.

32. On or about February 8, 2014, Defendant accessed Plaintiff's consumer report with TransUnion twice without a permissible purpose.

33. On or about March 5, 2014, Defendant accessed Plaintiff's consumer report with TransUnion without a permissible purpose.

34. On or about March 8, 2014, Defendant accessed Plaintiff's consumer report with TransUnion without a permissible purpose.

35. On or about April 8, 2014, Defendant accessed Plaintiff's consumer report with TransUnion twice without a permissible purpose.

36. On or about May 8, 2014, Defendant accessed Plaintiff's consumer report with TransUnion without a permissible purpose.

37. On or about May 13, 2014, Defendant accessed Plaintiff's consumer report with TransUnion twice without a permissible purpose.

38. On or about June 7, 2014, Defendant accessed Plaintiff's consumer report with TransUnion without a permissible purpose.

39. On or about June 14, 2014, Defendant accessed Plaintiff's consumer report with TransUnion twice without a permissible purpose.

40. On or about June 18, 2014, Defendant accessed Plaintiff's consumer report with TransUnion without a permissible purpose.

41. On or about August 8, 2014, Defendant accessed Plaintiff's consumer report with TransUnion without a permissible purpose.

42. A true and correct copy of relevant portions of Plaintiff's TransUnion Consumer Report

is attached hereto as Exhibit "D."

43. In order to gain access to Plaintiff's consumer report, post discharge of the debts underlying the Accounts in Plaintiff's Chapter 7 Bankruptcy Case, Defendant informed TransUnion that its alleged purpose for accessing Plaintiffs consumer credit report was for insuring or monitoring its accounts; however, the Accounts were no longer active, and at all relevant times, Plaintiff was not seeking new credit from Defendant, Defendant's purpose was to try to collect the discharged debt on the Account(s) in violation of the Bankruptcy Court's discharge injunction. If Defendant denies this was its purpose for taking such actions, then it was trying to gain access to Plaintiff's personal financial information, which is protected by law.

44. The conduct of Defendant at issue has proximately caused Plaintiff past and future mental distress and emotional anguish and other actual damages that will be presented to the jury.

45. After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that Defendant knew and continues to know that a discharge order means the debt is no longer collectible, but Defendant has made a corporate decision to willfully and maliciously act contrary to this knowledge in its calculated decision to violate the requirement to properly report and update Plaintiff's account.

46. After a reasonable time to conduct discovery, Plaintiff believes he will be able to show that all actions taken by employees, agents, servants, or representatives of any type for Defendant were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

47. After a reasonable time to conduct discovery, Plaintiff believes he will be able to show that all actions taken by Defendant were conducted with malice, wantonly, recklessly, intentionally, knowingly, and/or willfully, and with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.

## V.  GROUNDS FOR RELIEF - COUNT I

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et. seq*)

48. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

49. The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

    (f)  Certain use or obtaining of information prohibited. – A person shall not use or obtain a consumer report for any purpose unless –

    (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

    (2)  the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

    *See* 15 U.S.C. § 1681b (f).

50. Section 1681b(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

    (a) In General. – * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

    ***

    (3) To a person which it has reason to believe –

    (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

    ***

    (F) otherwise has a legitimate business need for the information * * *

  (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

51. On at least eighteen (18) occasions after the Discharge Order was signed and the Property surrendered, Defendant requested and obtained access to Plaintiff's consumer report with TransUnion.

52. On such occasions, Defendant misrepresented to TransUnion that such requests were made to review or insure its accounts.

53. When requesting and obtaining access to Plaintiff's consumer report and credit information from TransUnion, as described herein, Defendant had actual knowledge that it did not have a permissible purpose to obtain such access and information.

54. Defendant had actual knowledge that as of the granting and entry of the Discharge Order, the Accounts were closed and Defendant was legally prohibited from pursuing any collection against them or communicating with Plaintiff about the Accounts and the underlying discharged debt to justify an account review of his credit information. Further, when Defendant no longer owned the servicing rights on the Account(s), there

could be no legal justification for accessing Plaintiff's consumer report. Accordingly, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit reports with TransUnion during the times at issue.

55. At the time Defendant impermissibly accessed Plaintiff's consumer credit reports, Defendant had actual knowledge that Plaintiff had not requested new credit from it, nor had he initiated a credit transaction with Defendant at any time since the Bankruptcy Court signed the Discharge Order. Therefore, Defendant had actual knowledge that it did not have a legally permissible purpose to access Plaintiff's consumer report and credit information as it did.

56. Subsequent to the Bankruptcy Court's granting of the Discharge Order and Plaintiff's surrender of the Property, Defendant had actual knowledge that Plaintiff did not authorize access and review of his consumer report. As such, Defendant had actual knowledge that it did not have a legally permissible purpose to access Plaintiff's consumer report and credit information when it engaged in such action.

57. For Defendant to repeatedly request and obtain Plaintiff's private personal and financial information, in the face of actual knowledge that it had no permissible purpose to do so, constitutes its knowing and willful violations of the FCRA.

58. After a reasonable time to conduct discovery, Plaintiff believes he can prove that Defendant requested and obtained Plaintiff's private personal and financial information from the credit bureaus for the illegal purpose of attempting to collect on the underlying discharged debt.

59. After a reasonable time to conduct discovery, Plaintiff believes he can prove that Defendant used false pretenses, namely the representation that it intended to use

      Plaintiff's consumer report "to monitor or insure its account," to obtain Plaintiff's private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

60. After a reasonable time to conduct discovery, Plaintiff believes he can prove, additionally and/or in the alternative, Defendant is unwilling or unable to prevent its system from requesting and obtaining Plaintiff's consumer report without a permissible purpose, thereby subjecting Plaintiff to having his private, personal and financial information disclosed without his consent, authorization or other legal justification.

61. As a direct and proximate result of Defendant's conduct as outlined above, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress from the ongoing invasion of his privacy, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

62. Defendant's conduct reveals a conscious and reckless disregard of Plaintiff's rights. The injuries suffered by Plaintiff were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

63. Since Defendant's illegal pulling of Plaintiff's consumer reports will have a continuing negative effect on Plaintiff and the violations are ongoing in nature, Defendant is liable for any and all future harm suffered by Plaintiff as a result of Defendant's conduct.

## VI. GROUNDS FOR RELIEF - COUNT II

## INVASION OF PRIVACY

64. Plaintiff restates and reiterates herein all previous paragraphs.

65. Defendant's conduct, as described herein, when it acquired copies of Plaintiff's consumer report from TransUnion constitutes an invasion of Plaintiff's private affairs. The invasion was one that would be highly offensive to a reasonable person because confidential and sensitive personal and financial information is included a consumer report. Such wrongful acts caused injury to Plaintiff which resulted in extreme emotional anguish, loss of time, and damage to his credit.

66. Plaintiff's injuries resulted from Defendant's malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VII. GROUNDS FOR RELIEF - COUNT III
## VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

67. Plaintiff repeats, re-alleges, and incorporates herein all previous paragraphs above as if set forth herein in their entirety.

68. At all times material to this proceeding, Defendant had actual knowledge of Plaintiff's' Chapter 7 Bankruptcy Case and the discharge of the debt on the Accounts therein, as well as Defendant's Chapter 13 Bankruptcy Case and the Agreed Order lifting the automatic stay on the Property.

69. Defendant failed to cease its debt collection activity on the Account(s) and debt at issue when it became aware that Plaintiff filed for bankruptcy protection and the debt had been discharged, Property surrendered and the stay lifted on the Property, as evidenced by Defendant accessing his credit reports without a lawful purpose.

70. Defendant's aforesaid actions at issue were willful and constitute efforts to collect discharged debt from Plaintiff in violation the discharge injunction of 11 U.S.C. §524(a). Defendant's failure to comply with the aforesaid laws, in light of receiving notices from

the Bankruptcy Court about Plaintiff's Chapter 7 Bankruptcy Case, the discharge of Plaintiff's debt on the Accounts, the legal effect of the discharge, and the Chapter 13 Bankruptcy Case and lifting of the stay on the Property, illustrates its contempt for Federal law and the discharge injunction.

71. The actions of Defendant in repeatedly accessing Plaintiff's TransUnion consumer credit reports, over three years after the debt had been discharged and the Property vacated, constitutes a gross violation of the discharge injunction as set forth in 11 U.S.C. § 362 and 524(a)(1)-(3).

72. The facts and background stated above demonstrate that Defendant willfully violated the orders and injunctions of the Bankruptcy Court as they concern the Chapter 7 Bankruptcy Case filed by Plaintiff. With this prima facie showing, the duty is on Defendant to show, as the only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability. Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiff must prevail on his demands, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy filed by Plaintiff. Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant. Any allegation of a good faith exception should not be allowed.

73. Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to

collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…'"

74. No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with regard to the discharge injunction, as stated above.

75. The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint. None of the aforementioned has been approved by the Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case as pertaining to the rights and remedies of Defendant.

76. Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court. Any attempt to burden Plaintiff with policing the misconduct of Defendant would be a complete derogation of the law. It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendant. No allegation of a mitigation as a defense should be allowed.

77. Plaintiff has been injured and damaged by Defendant's actions and are entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §524, and pursuant to the

Court's powers under 11 U.S.C. § 105.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Roland Bruce Curry, Jr., prays the Court will:

A.  Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney fees for violations of the FCRA, for invasion of privacy, and for violating the bankruptcy discharge injunction;

B.  Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.  Award Plaintiffs pre-judgment and post-judgment interest as allowed by law; and

D.  Grant such other and further relief, in law or equity, to which Plaintiff might show him justly entitled.

Respectfully submitted,

\_\_\_*/s/ Marilyn S. Altamira*_____
Marilyn S. Altamira
State Bar Number 00796119
maltamira@mancheelawfirm.com
State Bar Number 00796988
Manchee & Manchee, PC
12221 Merit Drive, Suite 950
Dallas, Texas 75251
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

ATTORNEY FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial to a jury on all issues so triable.

| | |
|---|---|
| 1-7-15 | */s/ Marilyn S. Altamira* |
| Date | Marilyn S. Altamira |